# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

GARY CAUDILL, ET AL.,

       Plaintiffs,

v.                                                                Case No. 06-12866

SEARS TRANSITION PAY PLAN, ET                  Honorable Arthur J. Tarnow
AL.,

       Defendants.

_____/

## OPINION AND ORDER DEEMING RESOLVED PLAINTIFFS' OBJECTIONS TO PROPOSED LETTER TO THE CLASS AND INDIVIDUALIZED CALCULATION OF BENEFITS [399], GRANTING IN PART DEFENDANTS' MOTION FOR JUDICIAL REVIEW OF TAXED BILL OF COSTS, AND OBJECTIONS TO PLAINTIFFS' BILL OF COSTS [391], GRANTING DEFENDANTS' MOTION TO EXCLUDE CLASS MEMBERS LINDA ALLEN AND RONNIE WILMS [378], DENYING DEFENDANTS' MOTION TO FINALIZE AND/OR ALTER JUDGMENT [403], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY FEES, COSTS, AND POST-JUDGMENT INTEREST [394], AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR STAY OF ALL PROCEEDINGS, INCLUDING EXECUTION OF JUDGMENT, PENDING APPEAL [398]

Now before the Court are Plaintiffs' Objections to Proposed Letter to the

Class and Individualized Calculation of Benefits [399], Defendants' Motion for

Judicial Review of Taxed Bill of Costs, and Objections to Plaintiffs' Bill of Costs

[391], Defendants' Motion to Exclude Class Members Linda Allen and Ronnie

Wilms [378], Defendants' Motion to Finalize and/or Alter Judgment [403],

Plaintiffs' Motion for Attorney Fees, Costs, and Post-Judgment Interest [394], and

Defendants' Motion for Stay of All Proceedings, Including Execution of Judgment,

Pending Appeal [398].  A hearing on these matters was held on March 8, 2011.

## I.  Plaintiffs' Objections to Proposed Letter to the Class and Individualized Calculation of Benefits [399]

At the hearing held on March 8, 2011, all counsel indicated to the Court that

agreement has been reached as to the form of the proposed class letter.

Accordingly, Plaintiffs' Objections are deemed resolved.[1]

## II. Defendants' Motion for Judicial Review of Taxed Bill of Costs, and Objections to Plaintiffs' Bill of Costs [391]

Following entry of judgment, Plaintiffs filed a Bill of Costs [382].  The

Clerk of Court taxed costs in the amount of $11,034.25.  Defendants now raise

several objections to this amount.

### A. Depositions from *Allen v. Sears,* Case No. 07-11706

First, Defendants argue that Plaintiffs may not recover costs (totaling

$4,825.30) for transcripts of depositions that were not noticed or taken in this case.

Plaintiffs' Bill of Costs claims expenses related to the depositions of five

individuals whose depositions were noticed and taken not in this case but in a

related age discrimination case*, Allen v. Sears,* Case No. 07-11706, involving many

of the same class members as this case.

Plaintiffs argue in response that deposition transcript costs are taxable if

there was a reasonable need for the deposition; here, the arguments Plaintiffs

---

[1] The Court further notes that at the hearing, counsel for Plaintiffs withdrew their request for sanctions contained within this filing.

2

asserted using the supporting testimony were made in direct response to Defendants' arguments for why they were entitled to judgment. Plaintiffs further assert that Defendants should be judicially estopped from arguing that Plaintiffs could have requested the depositions in this case instead of *Allen* because Defendants have consistently argued in this case that Plaintiffs were not allowed to take depositions. Noticing the depositions using the *Caudill* caption would have served only to invite delay.

The Court finds that Plaintiffs cannot recover taxed costs for these depositions. Under 28 U.S.C. §1920, deposition transcript costs are taxable if they are "necessarily obtained for use in the case." Costs for depositions noticed and undertaken in a related manner are not permitted under that language. *See American Automotive, Accessories v. Fishman*, 991 F.Supp. 995, 997 (N.D. Ill. 1998) (Court finds that Plaintiffs were not entitled to costs because the "depositions were not 'necessarily' obtained for use in *this* case[,]" but rather were obtained for use in a separate state court case). Plaintiffs cite no cases holding that a party is entitled to collect costs for deposition transcripts taken in a related lawsuit. Here, the depositions were noticed not for this case, but for the *Allen* case, even if those cases involved related parties and issues. Although Plaintiffs assert that noticing the depositions using the *Caudill* caption would have invited delay because Defendants would have filed a motion in opposition, that does not mean

3

that Plaintiffs should not have proceeded in that manner.

### B. January 8, 2007 hearing transcript

Defendants argue that Plaintiffs may not recover costs ($33.10) for the transcript of this hearing before Magistrate Judge Morgan.  According to the Eastern District's Bill of Costs Handbook (attached as Exhibit 7 to Defendants' motion), costs for hearing transcripts will be denied unless counsel provides the Clerk with the title of the motion for which the transcript was used and the date the motion was filed.  Plaintiffs failed to provide in its Bill of Costs the title and date of the motion for which the transcript was used in support.

Plaintiffs argue in response that the transcript was ordered in connection with the objections [24] they filed to Magistrate Judge Morgan's Jan. 17, 2007 order [23] granting in part Plaintiffs' Motion to Compel.  Defendants assert in reply that Plaintiffs' claimed use is not taxable according to the Bill of Costs Handbook, which includes a list of transcripts which are taxable.

The Court finds that Plaintiffs cannot recover taxed costs for this transcript. The Bill of Costs Handbook states that a transcript is taxable if "used in support of a motion."  Here, Plaintiffs' indicate in their response that they "*ordered* the transcript of the hearing in connection with the objections" to the motion ruling. *See* Plaintiffs' Response at 4 (emphasis added).  However, they do not state that they actually *used* the transcript.  Moreover, the transcript was not included as an

exhibit with the objections [24] Plaintiffs filed.

### C. Expedited transcripts

At the March 8, 2011 hearing, counsel for Defendants withdrew their

objection to Plaintiffs recovering costs for various expedited transcripts.

### D. Conclusion

Accordingly, the motion is granted in part.  The total Taxed Bill of Costs,

which was originally $11,034.25, is reduced by $4,858.40 to $6,175.85.

## III. Defendants' Motion to Exclude Class Members Linda Allen and Ronnie Wilms [378]

Defendants move to exclude two class members, Allen and Wilms, based on

two alternative grounds: Lack of standing and judicial estoppel.[2]

### A. Standing

Defendants allege that they recently learned that these class members filed

bankruptcy petitions after their claims for TPP benefits had accrued.  The instant

case was filed before this Court on June 28, 2006.  Prior to that, Allen filed for

TPP benefits in February 2005 and was denied in March 2005.  She then filed a

bankruptcy petition in October 2005 and it was discharged in March 2006.  Wilms

filed a claim for TPP benefits in April 2005 and was denied that same month.  He

then filed a bankruptcy petition in May 2008, nearly 2 years after this case was

---

[2] Defendants' have withdrawn the portion of the motion seeking to exclude class member Timothy Mitchell [379].

filed.  The petition was discharged in Oct. 2008.

Defendants argue that both class members had attorneys in the bankruptcy proceedings.  However, neither class member included their claim for TPP benefits in their bankruptcy schedule; despite being required to list such claims, they entered "None."  Defendants assert that Allen and Wilms' claims for TPP benefits began accruing in 2005 when they were issued benefits denial letters.    According to Defendants, the claims had accrued at the time of the bankruptcy filing and thus the potential cause of action became the property of the trustee in bankruptcy. Therefore, these class members lack standing here.

The Court notes that both Allen and Wilms had counsel in their bankruptcy cases and did not list the TPP claims in the bankruptcy schedule.  Under 11 U.S.C. §541(a)(1), the bankruptcy estate is made up of "all legal or equitable interests of the debtor in property as of the commencement of the case, and it is well established that the interests of the debtor in property include causes of action." *See Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1998) (citation and internal quotation marks omitted).  Moreover, "It is well settled that the right to pursue causes of action formerly belonging to the debtor– a form of property under the Bankruptcy Code– vests in the trustee for the benefit of the estate.  The debtor has no standing to pursue causes of action."  *Id*. at 441 (citation and internal quotation marks omitted).

The Court finds that class members Allen and Wilms lack standing.  In particular, Wilms filed his bankruptcy case in 2008, two years after this case was filed, but did not mention this matter in his bankruptcy filing despite being represented by counsel.  The right to pursue the cause of action is with the trustee. *See In re: Winebrenner*, 170 B.R. 878 (Bankr. E.D. Va. 1994).  In *Winebrenner*, the Bankruptcy Court granted the trustee's motion to reopen the debtors' case after the trustee moved to reopen when he learned about a suit filed by the debtors about four months after the bankruptcy case closed.  The court found that the suit remained a part of the bankruptcy estate even though it was not included in the schedule, stating:

> Because these damage claims were *potential* assets of the bankruptcy estate, the trustee would have been an essential party unless he had knowingly abandoned the causes of action.  But since they were not scheduled by the debtor and there is no evidence that the trustee knew of these causes of action and then consciously abandoned them, they remain a part of the bankruptcy estate.

*Id*. at 882 (emphasis added); *see also Bittel v. Yamato*, 1995 U.S. App. LEXIS 37082 at *13 (6th Cir. 1995) (unpublished) (Court finds that Plaintiffs' suit may proceed "only if the trustee has abandoned his interest in the cause of action" since Plaintiffs had filed a bankruptcy case, which closed, and then subsequently filed suit against Defendant).  Here, since there is no evidence that the trustees abandoned any claims and the claims were not included in the bankruptcy proceedings even though they constituted "potential" assets of the bankruptcy,

Allen and Wilms have no standing to assert such claims here.[3]

Plaintiffs' response to the standing argument is that it is irrelevant but Plaintiffs' cited authority, *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002), and *Fidel v. Farley*, 534 F.3d 508, 512 (6th Cir. 2008), does not support that proposition.

Plaintiffs also argue that Defendants' standing argument should be barred by laches, at least as to Wilms,  but as Defendants point out, laches is an "affirmative defense" typically used by defendants who are trying to prohibit a plaintiff  from raising a certain claim.  Plaintiffs cite no case law where a plaintiff used this defense to counter an argument raised by a defendant.  Moreover, Defendants correctly note that laches can only be asserted by someone who has "clean hands." *See United States v. Weintraub*, 613 F.2d 612, 619 (6th Cir. 1979).  Here, both Allen and Wilms failed to let their creditors know in their bankruptcy filings about their denied claim for TPP benefits.

Thus, class members Allen and Wilms lack standing because of the bankruptcy proceedings.[4]

Accordingly, Defendant's motion is granted.  Allen and Wilms are excluded

---

[3] Although Plaintiffs assert that Allen had no reason to believe at the time of her bankruptcy filing that she had any right to bring a court action, Plaintiffs have not offered evidence establishing when Allen specifically became aware that she could further pursue the benefit.

[4] The Court declines to address Defendants' alternative argument (judicial estoppel) for excluding these class members.

from the class.[5]  As set forth in the terms of the Judgment [381], the amount of the

Judgment is reduced by the benefit amounts allocated to these individuals ($2,240

for Allen and $13,865.60 for Wilms; total reduction of $16,105.60).  The amount

of the Judgment is now $2,671,449.60.

## IV. Defendants' Motion to Finalize and/or Alter Judgment [403]

Defendants' Motion[6] requests that the Court alter the $2,687,555.20

judgment [381] previously entered for two reasons.

### A. Benefit Rate

Defendants argue that the benefit rate indicated in the document (the TPP

Expense Log) the judgment amount was based on should not have been utilized by

the Court in setting the judgment amount.  Defendants provided the document to

Plaintiffs during discovery.  According to Defendants, the benefit rates indicated in

that document were benefit rates in effect as of late 2004, not "the rate in effect as

of the date [class members] were supposed to transition to SHIP...."  *See*

Defendants' Motion at 3-4.  Defendants argue that the correct benefit rates to be

used are indicated in the claim denial letters class members received.  Utilizing

those rates would result in a reduction of nearly $500,000 in the judgment amount.

---

[5] Nothing in this order precludes either claimant from moving to reopen their bankruptcy cases.

[6] The arguments raised by the parties in the motion and response brief are also addressed in the filings pertaining to Plaintiffs' Objections to the proposed class letter [399, 407, 419].

Plaintiffs oppose Defendants' motion, arguing that Plaintiffs have relied multiple times on the TPP Expense Log in their filings without Defendants noting their opposition to the amounts represented in the document.  Plaintiffs assert that Defendants should therefore be bound by the benefit rate indicated in this document provided in discovery.  Plaintiffs object to the benefit rates now offered by Defendants and assert that additional discovery might be necessary if the Court accepted Defendants' position.  At the hearing on March 8, 2011, Plaintiffs further asserted that Defendants' Motion is untimely because it was not filed within ten days of the entry of judgment and fails to meet the standard required for this Court to grant a Motion to Alter a Judgment under Fed. R. Civ. P. 59(e).

The Court concludes that Defendants' Motion as to this objection does not satisfy the standard required for granting a Fed. R. Civ. P. 59 motion.

Defendants indicate that their Motion is filed pursuant to Fed. R. Civ. P. 59 but nowhere within their filing do they state the standard required to satisfy such a motion.  The Sixth Circuit has made clear that a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) "may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice."  *See Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations and internal quotation marks omitted).

The Court finds that Defendants have failed to satisfy the standard

10

enunciated in *Gencorp*.  Despite repeated opportunities to raise objections to the

TPP Expense Log, Defendants waited over one year to raise the instant specific

objection to the evidence that Plaintiffs relied on in various filings and that the

Court utilized in entering the judgment.

Plaintiffs filed the Expense Log (with the benefit rate indicated) as part of

their supplement to their summary judgment motion on October 21, 2009.[7]  *See*

Supplement [233], Exhibit Q.  Defendants admit that the Expense Log was created

in late 2004.  *See* Defendants' Motion [403] at 4.  The Expense Log was provided

to Plaintiffs "because it was what had been calculated at the time these individuals

were getting ready to transition."  *See* 10/21/10 Transcript [389] at 7.  In their

Supplement, Plaintiffs, relying on this document, requested that the Court "award

damages to the full class."  *See* Supplement [233] at 14.  Plaintiffs indicated that

there was evidence in the record from which an individualized assessment of

damages could be made for each class member and cited to the TPP Expense Log,

attached as Exhibit Q to the Supplement.

---

[7] Plaintiffs indicate in their response [408] to Defendants' Motion that they submitted the Expense Log in filings offered prior to the October 21, 2009 Supplement.  At the hearing on March 8, 2011, counsel for Plaintiffs repeated this assertion and specifically referenced Exhibit G of Plaintiffs' Motion for Class Certification [52].  However, Exhibit G does not contain the same information as the Expense Log.  Rather, it is titled "TPP Claims" and does not indicate a benefit rate for any of the class members.  The TPP Expense Log indicating a benefit rate (and filed as Exhibit Q to the Supplement) was not included in Docket No. 52.  Docket Nos. 71 and 100 also  contain a chart titled "TPP Claims," but the benefit rates indicated on that differ from the numbers indicated in the TPP Expense Log filed as Exhibit Q.  Docket No. 195 contains what appears to be an unredacted version of the chart submitted with Docket No. 52.  Nevertheless, the TPP Expense Log was clearly filed into the record on October 21, 2009.

In their 73 page response brief [334] (in addition to lengthy exhibits) to Plaintiffs' motion and in their own 106 page brief in support of their Motion for Judgment on the Administrative Record [333] (in addition to lengthy exhibits), both filed November 2, 2009, Defendants failed to address the Expense Log. They never indicated that the chart, which they had since late 2004, included inaccuracies in their view or specifically that it actually could not be used to calculate individualized damages because the benefit rate on the chart was for a period different than the one Defendants believed should be utilized for calculating benefits.

Five months passed and Defendants never raised any concerns regarding the Expense Log in any supplemental filings, despite the fact that Defendants did in fact make a supplemental filing on April 23, 2010 [357] shortly before the scheduled hearing on the summary judgment motions.

At the hearing held on the cross dispositive motions on April 27, 2010, Defendants again never indicated that the chart was inaccurate in their view because it utilized a benefit rate for a period Defendants believed was incorrect to rely on and did not inform the Court that it should not rely on the document to calculate damages, despite the fact that Plaintiffs cited to the Expense Log in their brief and requested that the Court "award damages to the full class."  Defendants thus were aware that if the Court did rule in Plaintiffs' favor, it might enter a

12

judgment awarding benefits to the entire class.

Following the hearing, the Court took the pending motions under advisement. Defendants again did not inform the Court that in their view, it should not rely on the benefit rate indicated in the Expense Log.

On May 27, 2010, the Court granted [358] Plaintiffs' Motion for Summary Judgment and ordered Defendants to provide benefits to class members. A final judgment was not entered. The Court noted that agreement on the value of various milestones had not been reached.[8]

Following the issuance of that opinion, Defendants did not inform the Court that it should not in their view rely on the benefit rate indicated in the Expense Log in setting the amount of the judgment.

Plaintiffs subsequently filed a Motion for Entry of Judgment [360] on June 18, 2010. In that motion, Plaintiffs again attached the Expense Log as an exhibit and asked the Court to enter a judgment in the amount reflected on the chart ($2,687,555.20).[9] Defendants filed a response [364] to that motion on July 2, 2010 and once again failed to inform the Court that the chart they gave Plaintiffs was inaccurate in their opinion because it reflected a benefit rate for a period different

---

[8] The Court stated, "The parties have not yet reached agreement on the amount of benefits, taking into account the value of various milestones reached, due to the class."

[9] Plaintiffs' proposed judgment also addressed the issue of milestones but did not assign a specific value to those milestones.

than the one that they believed should be used to calculate benefits.  All they stated

in their filing was that:

> [D]uring recent discussion between counsel, Plaintiffs' counsel
> claimed that Defendants' chart– which Plaintiffs rely upon as the basis
> for their request for TPP benefits– contain errors with respect to two
> class members.... Plaintiffs also requested that Defendants re-check
> the data regarding all other class members to ensure that it contained
> no errors.  Defendants have agreed to do so and are currently in the
> process of re-checking all of the data to confirm its accuracy...

Defendants' Response [364] at 8.  Thus, although Defendants indicated that data

was being re-checked, they stated that they were only doing it *at Plaintiffs'*

*request*.  They in no way indicated to the Court or Plaintiffs in their filing that the

benefit rate indicated on the chart created in 2004 that they gave Plaintiffs was for

a period different than the one that they believed should be used to calculate

benefits.

Subsequently, at the hearing on Plaintiffs' Motion for Entry of Judgment

held on October 7, 2010, Defendants again did not tell the Court that the chart was

inaccurate in their view because it utilized a benefit rate that they thought was

incorrect.  Plaintiffs asked the Court to enter a judgment at the hearing based on the

amounts in the Expense Log Defendants provided during discovery.  Plaintiffs

argued that Defendants should be bound by the information they provided during

discovery.  At one point, Plaintiffs' counsel asserted, "With respect to the benefit

amount, this is the information that they provided to us.  They should be bound to

that information that they provided to us." *See* 10/8/10 Transcript [389] at 9.  In

response, Defendants did not state that the benefit rate indicated in the document

Plaintiffs relied on was for an incorrect period.  Later in that same hearing,

Plaintiffs' counsel stated, "We think that the numbers that they provided to us must

be accurate; that those will be the numbers unless there's some reason to think that

they are not...." *Id.* at 38.  In response, counsel for Defendants again did not

inform the court of their specific objection to the six year old document Defendants

had prepared themselves and provided to Plaintiffs.  Defendants did request that

the Court refrain from entering a judgment but at no time during the hearing did

Defendants inform the Court or Plaintiffs that the Expense Log could not be relied

upon in setting a judgment amount *specifically* because of an incorrect benefit rate.

Finally, after the Court entered a judgment [381] on October 8, 2010,

Defendants first raised the specific objection regarding the benefit rate used in the

chart when they filed the instant motion to alter judgment pursuant to Fed. R. Civ.

P. 59(e) on November 5, 2010[10], over one year after Plaintiffs submitted the

Expense Log in support of their request for damages in their supplement to their

summary judgment motion and after multiple times appearing before this Court.

Defendants have offered no basis upon which this Court might alter the

---

[10] Although Plaintiffs asserted at the hearing on March 8, 2011 that the Rule 59 motion
was untimely because it was not filed within 10 days after entry of judgment, the Court finds that
the motion was timely submitted, as Rule 59 requires that the motion be submitted within 28
days after judgment is entered.

judgment under Fed. R. Civ. P. 59(e).  As noted above, Defendants did not even assert in their motion [403] the grounds upon which a Rule 59 motion may be granted and how that standard is satisfied in this case.  At the hearing on March 8, 2011, the Court asked defense counsel how the standard was met.  Counsel did not assert that the Court had made a clear error of law in setting the judgment or that there was an intervening change in controlling law.  Counsel also did not assert that the arguments and evidence they were submitting now was newly discovered. Indeed, counsel admitted at the hearing that Defendants have had available the benefits information regarding class members.  Counsel further admitted in their brief that Defendants have had the Expense Log since 2004.  *See* Defendants' Motion [403] at 4.  Since "newly discovered evidence" under Rule 59 means that "the evidence must have been previously unavailable[,]" this evidence clearly was not newly discovered.  *See Gencorp*, 178 F.3d at 834.

Rather than arguing the above grounds, counsel for Defendants asserted at the hearing that their Rule 59 motion should be granted on the ground of preventing a "manifest injustice."

There is absolutely no basis to support Defendants' claim that a denial of their motion would constitute a "manifest injustice."  As detailed above, Defendants waited over one year to raise their specific opposition to the Expense Log (which Plaintiffs filed with the Court on October 21, 2009), despite numerous

opportunities to do so in writing and in appearances before the Court.  Nothing

prevented them from offering opposition.  This evidence has been in their

possession since 2004 and they had ample time to examine it.  At no point before

the instant Rule 59 motion was filed on November 5, 2010 did they raise this

specific objection with the Court or with Plaintiffs.  Counsel for Plaintiffs indicated

at the March 8, 2011 hearing that she first learned that the Expense Log was

inaccurate when Defendants filed the instant motion asking that the judgment be

reduced by nearly $500,000.  Defendants offer no evidence establishing or

suggesting that Plaintiffs were aware that the chart could not be relied upon prior

to the filing of the motion on November 5, 2010.[11]  Indeed, Plaintiffs have been

relying on this chart for over one year and have been representing to the Court that

the numbers contained in it are suitable for use in entering a judgment.

Counsel for Defendants asserted at the March 8, 2011 hearing that although

Plaintiffs submitted the Expense Log in October 2010 to the Court, they did so not

---

[11] Although Plaintiffs assert that Defendants did not raise their specific challenge to the Expense Log until the instant motion, Defendants maintain in their reply brief that they informed Plaintiffs in a cover letter submitted to Plaintiffs at the time the chart was provided in January 2009 that the indicated benefit rates could not be relied upon.  At the March 8, 2011 hearing, Defendants submitted a copy of the letter to the Court.  The Court finds that nothing in the letter indicates that the benefit rates stated in the Expense Log could not be relied upon in Defendants' view because they were for a different benefit rate than the one that Defendants believed should be relied upon in setting a judgment amount.  Although the letter does state that the document is provided for settlement purposes, Plaintiffs indicated at the March 8, 2011 hearing that they requested the Expense Log in discovery subsequent to the January 15, 2009 letter and received it.  They then, as discussed above, used the Expense Log in various filings and Defendants never raised the specific objection they are now raising.

for purposes of determining damages.  Counsel thus suggests that this justifies their failure to raise the specific objection they now raise.  However, counsel is mistaken– As noted above, Plaintiffs' Supplement [233] to their summary judgment motion clearly states, "The Court should award damages to the full class" and cites to the Expense Log as evidence for which the Court can rely upon to make an individualized assessment of damages for each class member.  *See* Supplement at 14.  Defendants were certainly on notice that Plaintiffs were not just seeking a finding of liability but were also asking the Court to set damages.

"Rule 59(e) motions are aimed at *re*consideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued."  *See Federal Deposit Ins. Corp. v. World University, Inc.,* 978 F.2d 10, 16 (1st Cir. 1992) (citations and internal quotation marks omitted).  Here, there is no reason that Defendants could not have raised this specific objection sooner.  There is simply no "manifest injustice" in the Court utilizing the evidence Defendants provided to Plaintiffs.[12]

---

[12] Although the Court is evaluating Defendants' motion on its own merits, the Court notes that this is not the first time in this matter that Defendants have come forward with a new argument after years of litigation on an issue.  For nearly four years, Defendants argued that all class members were properly denied benefits.  In May 2010, the Court granted Plaintiffs' Motion for Summary Judgment and awarded benefits to the entire class, concluding in part that Defendants either knew or should have known that under their methodology, class members would be unable to attain benefits.  Within fourteen days, Defendants abruptly changed course after almost four years, arguing in their motion for reconsideration that they had reviewed their data and that one class member, Murphy, actually was eligible for benefits and that this showed that the Court's ruling that it was impossible to get benefits was incorrect.  The Court concluded that the evidence Defendants was offering was not newly discovered (and thus impermissibly

Accordingly, Defendants' motion to alter judgment based on this new objection is denied.

**B. Wage Set off**

Defendants further argue that the judgment should be reduced because they are entitled to a set off for wages earned by class members during the period they would have received TPP benefits. Defendants contend that under the terms of the TPP plan, an employee can either elect to receive severance benefits or take the job offered to him/her but not both. Here, all class members were denied benefits. Some continued to work for SHIP while they were seeking benefits; others continued to work there after being denied benefits. Defendants argue that allowing these class members to obtain benefits would provide them with an inappropriate windfall. The total amount of the set off would reduce the judgment amount by over $600,000.

Plaintiffs argue that Defendants are not entitled to a wage set off. Plaintiffs contend that Defendants are now raising a new argument and that Defendants "robbed" class members of their choice between taking benefits or accepting a new job and now want to reap the benefit of that decision. *See* Plaintiffs' Response at

---

raised in a motion for reconsideration) since Defendants had possessed the evidence for over five years. The Court further ruled that even if it did consider the evidence, it did not undercut the Court's prior ruling and indeed affirmed that under the rigged formula utilized by Defendants, Murphy was ineligible for benefits.

8.  Defendants' position is also inconsistent in Plaintiffs' view with the position taken by the plan administrator during the administrative process.  When class members were applying for benefits, many were told that they could work for SHIP while their claims for benefits were pending and that such work would not mean that they accepted a "comparable" job that would prevent the payment of benefits.  Furthermore, Plaintiffs note that although Defendants indicated in their previously rejected motion for reconsideration that Defendants have now decided that Plaintiff Murphy is entitled to benefits, the letter sent to counsel indicating that Murphy is entitled to benefits does not mention any wage set off.

The Court again concludes that Defendants' Motion as to this objection does not satisfy the standard required for granting a Fed. R. Civ. P. 59 motion.  The above discussion regarding Defendants' new argument as to the benefit rate applies equally as to this objection regarding a set off.  In various filings and appearances before the Court, Defendants have not previously raised this issue, despite nothing barring them from doing so.  Accordingly, it is inappropriately raised in a motion to alter judgment pursuant to Fed. R. Civ. P. 59(e).

Even assuming arguendo that the issue was properly raised in the instant motion, Defendants' argument lacks merit.

Defendants are correct that under the language of the TPP, an employee who is "offered" a non-comparable job and severance benefits may accept one or the

other, but not both.  The Plan also states, in a section titled "Other Employment After Start of Benefits," that if any employee receives benefits and then accepts a new job with Sears, benefits will be discontinued; moreover, "Should the associate have received a lump sum payment prior to beginning the new employment, the associate will be required to return a prorated potion..."  See Defendants' Motion [403], Exhibit 3.  Defendants argue that the this language means that class members who worked for SHIP after being denied benefits should have the TPP benefits now owed to them reduced.

However, nothing in the language of the TPP requires a set off in the instant situation.  Defendants themselves acknowledged this at the March 8, 2011 hearing, stating that Plaintiffs were attempting "to take advantage of the fact that the plan does not contemplate the unusual situation" occurring here where a court is ordering an award of benefits after the plan administrator denied them.  The Court agrees with Defendants that the plan does not address this situation and declines to read new language into the plan.  Defendants are incorrect that Plaintiffs are trying to advantage of anything; rather, Plaintiffs correctly observe that nothing in the plan requires a set off in the instant situation.  Furthermore, the Court finds that no ERISA statutory language requires such an outcome.

Moreover, although Defendants argue that the case law requires a set off, the cases they cite do not support imposing a set off in a case like the instant one

where the Court found Defendants wrongfully denied benefits under ERISA to class members and then awarded benefits to the entire class.  The above language in the TPP regarding an employee returning benefits only applies in situations where the associate is granted benefits and then later resumes employment with Sears.  It does not apply to situations like the one here where an employee has little choice but to work in a new job after being improperly denied benefits.  The TPP provision discusses the return of *benefits*, not the return of *salary* earned for work.

In sum, Defendants improperly raise the issue of a set off in the instant motion.  However, even assuming arguendo that Defendants properly raise this argument, it lacks merit and this Court rejects it.  Nothing in the language of the TPP or ERISA requires a set off.  Defendants' Motion to Finalize and/or Alter Judgment [403] is denied.

## V. Plaintiffs' Motion for Attorney Fees, Costs, and Post-Judgment Interest [394]

Plaintiffs seek payment in their motion for 1,756.8 hours of work.[13]  They request a rate of $500/hour for attorneys Brault, Fagan, Giroux, and Valenti

---

[13] In computing the total attorney fees, the Court is relying on the log Plaintiffs submitted at the hearing on March 8, 2011 that they indicated was updated to include corrections to entries that Plaintiffs had previously acknowledged were incorrect and entries for time spent subsequent to the filing of the Motion for Attorney Fees.  Defendants were permitted to file a supplemental response to this submission and did so [436] on March 22, 2011.  Their response included a revised chart (they previously submitted versions of this chart in prior filings) addressing their objections to specific entries.  The Court relies on Defendants' latest response to the log in considering their objections.

(combined total hours of 1670.2), as well as $400/hour for Heather Jefferson Glazer (total hours of 86.6), which would compute to a total lodestar of $869,740. Plaintiffs also want that amount enhanced under case law that permits enhancement based on various factors. In response, Defendants argue that Plaintiffs are entitled to $0 in attorney fees. Alternatively, they argue that the hourly rates should be reduced to $250/hour and $200/hour and the amount of hours billed should be reduced substantially, lowering the total attorney fees to $250,876.

### A. Are Plaintiffs entitled to any attorney fees?

The Supreme Court has concluded that in order to obtain benefits under 29 U.S.C. §1132(g), a party must first show "some degree of success on the merits." *See Hardt v. Reliance Standard Life Insurance*, 130 S. Ct. 2149, 2158 (2010) (citation and internal quotation marks omitted). After a claimant meets this requirement, a court may then consider five factors in determining whether to award fees:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties positions.[14]

---

[14] Defendants claim that the requisite showing in determining whether attorney fees should be awarded is whether a party has obtained "victories on 'central issues.'" *See* Defendants' Response [402] at 2. However, that is a misreading of the *Hardt* case. The Court there specifically stated that a claimant "must show some degree of success on the merits before

23

*See Sec. of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985); *see also Hardt*, 130 S.Ct. at 2155.  "No single factor is determinative, and thus, the district court must consider each factor before exercising its discretion."  *See Moon v. Unum Provident Corp.*, 461 F.3d 639, 642-643 (6th Cir. 2006).

Here, the Court granted Plaintiffs' Motion for Summary Judgment and awarded over $2.6 million to the class after finding that Defendants violated ERISA by arbitrarily and capriciously denying benefits to class members through use of a rigged formula under which claimants could never receive benefits and, consistent with that, interpretations of the plan's language in a manner under which class members could never receive benefits.  Plaintiffs have clearly shown "some degree of success on the merits."

The Court will now consider the five factors:

### 1. Opposing party's bad faith

As just noted, the Court found that Defendants violated ERISA by arbitrarily and capriciously denying benefits to class members through use of a rigged

---

a court may award attorney's fees.... A claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victor[y], but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits *without conducting* a lengthy inquir[y] into the question whether a particular party's success was substantial or occurred on a central issue."  *See Hardt* at 2158 (emphasis added) (citation and internal quotation marks omitted).

 Defendants go on to assert that a court may not have to consider the five factors based on the Supreme Court's ruling in *Hardt*, but the Court there did indicate, "We do not foreclose the possibility that once a claimant has satisfied this requirement [shown some degree of success on the merits]..., a court may consider the five factors..."  *Id*. at 2158 n.8.

24

formula under which claimants could never receive benefits and, consistent with that, interpretations of the plan's language in a manner under which class members could never receive benefits. The Court also found that Defendants knew or should have known that under their methodology, class members could never obtain benefits.

This factor favors Plaintiffs.

### 2. Opposing party's ability to satisfy attorney's fees award

Defendants concede in their response that they have the ability to satisfy a fee award. *See* Defendants' Response at 4. This factor thus favors Plaintiffs.

### 3. Deterrent effect

The Court's ruling could certainly deter other plan administrators from utilizing such flawed methodologies in considering benefits. This factor favors Plaintiffs.

### 4. Common benefit

Plaintiffs sought to confer a common benefit upon the entire class. The judgment entered awards benefits to a class of over 80 individuals. This factor thus favors Plaintiffs.

### 5. Relative merits of the parties' positions

Certainly, this factor weighs in Plaintiffs' favor, as Plaintiffs prevailed in this matter when the Court, as noted above, found that Defendants violated ERISA

by arbitrarily and capriciously denying benefits to class members through use of a rigged formula under which claimants could never receive benefits and, consistent with that, interpretations of the plan's language in a manner under which class members could never receive benefits.

### 6. Conclusion

The five factors overwhelmingly weigh in favor of awarding Plaintiffs attorney fees.

### B. The billing rate

Now that it has been determined that Plaintiffs are entitled to an award of attorney fees, the question is– How much?  The Sixth Circuit has concluded:

> The primary concern in evaluating a request for attorney fees is that the fee awarded be reasonable.  A reasonable fee is one that is adequate to attract competent counsel, but... [does] not produce windfalls to attorneys.  In determining a reasonable attorney-fee award, the district court must calculate the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate.

*See Paschal v. Flagstar Bank, FSB*, 297 F.3d 431, 434 (6th Cir. 2002) (citation and internal quotation marks omitted).  Additionally, "A trial court, in calculating the reasonable hourly rate component of the lodestar computation, should initially assess the prevailing market rate in the relevant legal community[,]" which is the "rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record...."  *See Adcock-Ladd v. Sec. of*

*Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (citation and internal quotation marks omitted). The "relevant legal community" is the "legal community within that court's territorial jurisdiction...." *Id.* at 350.

Attorney Brault indicates she is entitled to a market rate of $500/hour. In support of that, she submits declarations from several Michigan attorneys who state they represent employees in employment cases and that even though they do not receive $500/hour for cases, "The complexity of class litigation, novel issues of law under ERISA, and vigorous defense are all factors, which if present, would indicate that an hourly rate of $500 is reasonable." *See* Plaintiffs' Motion, Exhibit B. Attorney Brault also points to the Laffey Matrix, which is a matrix of hourly rates for Washington, D.C. area attorneys, in support of a $500/hour fee.

Defendants maintain that the declarations Plaintiffs provide offer no evidence of what an attorney in this legal community (Eastern District of Michigan) gets paid for class action ERISA matters. Defendants also point to Ms. Brault's 2006 affidavit in a suit before another judge where she states that she generally charges $250/hr or more when she bills at an hourly rate. *See* Defendants' Response [402], Exhibit 8. Defendants state that the most the market rate should be is the amount paid to their own attorneys in this matter, which is $300/hour (attorney Alaimo), $190/hour (attorney Warren), and $150/hour (attorney Schwartz). *Id.* at 8. Ultimately, Defendants state that $250/hour is an

27

appropriate rate for attorney Brault.

The Court finds that Plaintiffs have failed to demonstrate that a market rate of $500/hour is appropriate in this matter. As Defendants point out, Plaintiffs have not shown that the prevailing market rate for ERISA class action litigation of this nature in the relevant legal community is $500/hour. Plaintiffs are unable to point to any attorneys in this district who bill at $500/hr for ERISA class action cases. The declarations submitted from attorneys (who themselves do not indicate that they bill $500/hour and do not indicate if even they work on ERISA class action cases or any ERISA litigation) do not establish that $500/hour is the prevailing market rate; they just state that it could be a fair amount depending on a number of factors. Plaintiffs' references to the Laffey Matrix and cases outside of this district and covering different areas of the law also do not prove that the prevailing market rate for ERISA class action litigation in the Eastern District of Michigan is $500/hour.

Although Defendants assert that $250/hour is a reasonable rate here, the Court concludes that a reasonable market rate for attorney Brault is $300/hour. That is the rate that attorney Alaimo, also an ERISA class action practitioner in this market, states in a declaration that he bills for this case. *See* Defendants' Response [402], Exhibit 10. Plaintiffs state in their reply that Defendants' complete billing records would likely indicate a larger attorney fee. *See* Plaintiffs' Reply at 4.

However, that assertion is unsubstantiated.  Mr. Alaimo has submitted a

declaration to this court, in which he declares under penalty of perjury, that he bills

$300/hour in this case.

Accordingly, attorney Brault, along with attorney Fagan, attorney Giroux ,

and attorney Valenti, are entitled to a rate of $300/hour and attorney Jefferson

Glazer is entitled to a rate of $240/hour.[15]

**C. Number of hours**

Plaintiffs assert that the number of hours expended in this case is 1756.8.

Defendants contend that this number should be reduced by 485.1 hours.

Defendants then offer a chart that includes a breakdown of every objection they

have to each hour charged.

**1. Plaintiffs agree some entries should be stricken**

Plaintiffs agree with Defendants that some entries are incorrect and should

 be stricken.  The number of hours listed below are the number of hours that are to

be subtracted from the initial claim of 1756.8 hours.  The Court notes that if a

deduction fits into more than one category (such as Plaintiffs agree that an entry

should be stricken, the entry is duplicative, and it relates to an administrative task)

the entry will only be addressed once.

---

[15] Giroux, Valenti, and Jefferson Glazer are attorneys with attorney Fieger's firm, who
are co-counsel on this case.  In Plaintiffs' motion, they indicate that they are seeking a rate for
Glazer that is 20% lower than the other attorneys.  Accordingly, the Court has determined that a
reasonable rate for her is $240/hour, which is 20% less than the other attorneys.

a. 12/4/06- Brault- Research/Motion Hearing- 5 hours

b. 1/14/09- Brault- Analysis- 5 hours

c. 1/16/09- Brault- Subpoena- .1 hours (Plaintiffs indicate 1/19/09 in their reply as the date to be stricken but make clear that the entry they seek to remove is the entry regarding the subpoena of records from Kearney.  Defendants indicate they are seeking to deduct the 1/16/09 entry, not the 1/19/09 entry)

### 2. Duplicate, unnecessary, and excessive entries

The Court will now consider Defendants' recommended deductions.

Defendants argue that Plaintiffs did not make a good faith effort to exclude redundant and unnecessary work from their fees petition.  However, simply because Plaintiffs have more than one entry for a single day indicating the same activity (for example, 4/25/08 has an entry for attorney Brault indicating eight hours of deposition preparation and a second entry for two hours of deposition preparation) does not make that work unnecessary.  Defendants have no basis for asserting that this type of entry is unnecessary or redundant.  Defendants also claim that the total hours billed are excessive.  Again, Defendants have no basis for broadly making this claim.

Having reviewed the entries deemed excessive, duplicates, and unnecessary, the Court makes the following deductions:

a. 8/6/06- Giroux- Review of notice of appearance- .2 hours

30

b. 11/8/07- Brault- Hearing- 1.3 hours.  The transcript indicates, contrary to Plaintiffs' log, that the hearing did not last for 2 hours.

c. 2/3/07- Giroux- Review ex parte motion to file objections in excess of page limits- .5 hours

d. 8/1/08- Brault- McShane deposition- 5 hours– This is a duplicate entry. McShane was not deposed on 8/1/08; he was deposed on 8/8/08.  Plaintiffs mistakenly indicate that the deposition took place on 8/6/08; however, Defendants do no object to Plaintiffs' billing of 4.5 hours on 8/6/08 for the deposition.

e. 4/27/10- Brault- Oral argument- .5 hours.  The transcript indicates that the hearing lasted two hours.

f. 4/27/10- Fagan- Oral argument- .5 hours.  The transcript indicates that the hearing lasted two hours.

The remaining deductions recommended by Defendants based on claims that the entries are excessive, duplicates, or unnecessary are rejected.

### 3. Hearings counsel did not attend

Defendants argue that counsel billed for hearings and depositions they did not attend or that did not occur.

Having reviewed the entries Defendants argue counsel billed for hearings and depositions they did not attend or that did not occur, the Court makes the following deductions:

31

a. 11/8/07- Fagan- Hearing- 2 hours.  According to the transcript, only Ms. Brault appeared on behalf of Plaintiffs.  *See* Docket Entry #100-2, Exhibit C.

b. 8/7/08- Fagan- Deposition of McShane- 3 hours.  The transcript does not indicate that Fagan was present.  The deposition for McShane was also on 8/8/08.  *See* Docket Entry #402-5, Exhibit 4.

c. 6/15/09- Giroux- Attend status conference- 1.7 hours.  According to the transcript, Giroux did not attend this conference.  *See* Docket Entry #402-3, Exhibit 2.

### 4. The *Allen* case

Defendants move for deductions for entries made that relate to the *Allen* litigation.  For various entries, Defendants move to split the time indicated in half, claiming that it relates to both cases.  Plaintiffs indicate in their sur-reply that records for this case and *Allen* are separate and there is no basis for Defendants to state the records are commingled.

Having reviewed the entries Defendants assert should be reduced because they relate to the *Allen* case, the Court makes he following deductions (other than those indicated above that are already being removed for other reasons).

a. 2/26/09- Brault- Review Piranian transcript- .8 hours[16] (remainder of 2/26/09 entry is not deducted).

---

[16] 4.7 hours are included in the log.  Dividing that number by 6 (total functions performed on that day as per entry) rounds to .8 hours.

Any remaining deductions Defendants recommend based on claims that the entries should be reduced because they relate to the *Allen* case are rejected. Defendants fail to establish that the challenged time was spent not on this case, but on the *Allen* case.

### 5. Billing for administrative tasks

Defendants argue that the use of attorney time to perform administrative tasks is unreasonable. Defendants also fault Plaintiffs for billing for "paralegal" tasks. Plaintiffs contend that countless hours were spent by counsel's administrative staff on mailings and that these services have not been characterized as attorney fees.

Plaintiffs are, for the most part, correct– Many of the entries Defendants refer to as so-called "administrative tasks" are not administrative; they deal with billing for work that is not inappropriate for an attorney to do (such as reviewing the administrative record or preparing for a deposition). In addition, for entries that indicate legal and non-legal tasks, such as organizing a meeting and discussing a brief, Defendants request that the whole entry be stricken. This Court declines to do so. Instead, only a portion of such entries will be stricken. Accordingly, if there are four tasks listed and only one is administrative, then the Court will reduce the hours billed by only 1/4th, rather than by the whole amount of the entry.

Having reviewed the entries Defendants assert should be deducted based on

claims that the tasks referenced were administrative and in some cases should have been done by a paralegal, the Court makes the following deductions:

    a. 3/7/08- Brault- Organized file- .5 hours

    b. 8/21/08- Brault- Re-sorting questionnaires- 1.55 hours (remainder of entry is not deducted).

    c. 11/6/08- Brault- Organized file- 2.5 hours (remainder of entry is not deducted).

    d.1/6/09- Brault- "Filing exhibit organizing"- 3.0 hours (remainder of entry is not deducted)

    e. 1/7/09- Brault- Filing- 1.08 hours (remainder of entry is not deducted).

    f. 3/5/09- Brault- Binders- 1.2 hours (remainder of entry is not deducted).

    g. 4/13/09- Brault- Organize motions- .67 hours (remainder of entry is not deducted).

    h. 11/5/09- Fagan- Organize meeting- .1 hours (remainder of entry is not deducted).

    The remaining deductions Defendants recommend based on claims that the entries are administrative or should have been done by a paralegal are rejected.

### 6. Travel time

    Defendants assert that Plaintiffs are not entitled to the full hourly rate for "travel time"; rather, travel hours should be paid at a 50% rate.

The Court finds no basis for making such a reduction, as "travel time is ordinarily billable and therefore appropriately included in an award of attorney's fees..." when the requested time is reasonable.  *See Smith v. Columbia Gas of Ohio Group Medical Benefit Plan*, 2010 U.S. Dist. LEXIS 10470 at *22 (S.D. Ohio 2010).

### 7. New/modified entries

Defendants identify various entries in the log submitted at the March 8, 2011 hearing as differing from entries previously filed with the Court.

Having reviewed the entries Defendants assert should be deducted based on being new or modified, the Court makes the following deductions based on Plaintiffs' failure to provide sufficient grounds for adding or modifying the entries:

    a. 7/8/06- Brault- .4 hours

    b. 1/8/07- Fagan- 2.5 hours

    c. 3/20/07- Brault- .6 hours

    d. 1/22/08- Brault- 4 hours

    e. 11/17/08- Brault- Motion hearing- 3 hours

### 8. Deductions not otherwise noted

The Court also makes the following deduction not otherwise noted:

a. 1/15/08- Brault- Response to Motion to Strike Exhibits- 8 hours- No such

motion or response was filed in this case at that time.

b. Giroux- .3 hours[17]

### 9. Deductions not permitted

a. Plaintiffs' entries for 11/6/09 will not be stricken.  Defendants offer no reasonable basis for doing so.

### 10. Other objections

Any other specific deductions recommended by Defendants not already addressed are rejected.

### 11. Insufficient detail

Defendants claim that Plaintiffs' billing records fail to provide an adequate explanation of the work done on this case.  Based on this alleged vagueness, Defendants assert that this Court should reduce any fee award by at least 20%.

The Court rejects Defendants' argument.  An attorney "is not required to record in great detail how each minute of his time was expended.  But at least

---

[17]   Plaintiffs indicate in their reply that they agree to strike entries for Giroux on 3/21/08 and 7/11/08 but no such entries exist.  Plaintiffs also indicate in their reply that they agree to strike Giroux's time on 3/20/07 and 3/20/09, which total 1.9 hours, but only appear to subtract 1.6 hours in their final log submission.  The Court notes that Plaintiffs submitted a revised log at the March 8, 2011 hearing that indicated that Giroux's total hours were 69.70.  The log indicates that a breakdown of total hours for Giroux is attached to the log.  However, no such attachment was submitted.  Accordingly, the Court will rely on the breakdown of hours previously submitted for Giroux.  *See* Plaintiffs' Motion [394], Exhibit 1.  That exhibit indicates that Plaintiffs originally sought payment for 71.3 hours for Giroux.  The 1.6 hour difference in hours is accounted for by Plaintiffs in their reply brief [405], where they indicate that 1.6 hours of time should be subtracted from the breakdown of Giroux's time for entries on 3/20/07, 3/21/08, and 3/20/09.  As only 1.6 hours of time appears to have been subtracted, an additional .3 hours is subtracted from Giroux's total time.

counsel should identify the general subject matter of his time expenditures." *See McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983).

Plaintiffs' entries sufficiently detail the subject matter of their time expenditures. There is no basis for reducing their fees by 20% based on lack of detail. *See McCombs*, 395 F.3d at 360-361 (court affirms district court's conclusion that counsel's entries "were sufficient even if the description for each entry was not explicitly detailed"); *see also Hyldahl v. AT&T*, 2009 U.S. Dist. LEXIS 72196 at *9 (E.D. Mich. 2009) (court, in awarding attorney fees, finds that Plaintiff's descriptions for work done provided "sufficient explanation" of the subject matter of the expense); *ACLU of Ky. v. McCreary County*, 2009 U.S. Dist. LEXIS 22206 at *12-13 (E.D. Ky. 2009); *United States ex rel. Mackay v. Touchstone Research Labs., Ltd.*, 2009 U.S. Dist. LEXIS 90779 at *10 (S.D. Ohio 2009); *Ferrero v. Henderson*, 2005 U.S. Dist. LEXIS 15246 at *6 (S.D. Ohio 2005).

### 12. Block billing

Without citing specific entries, Defendants assert that throughout Plaintiffs' billing records, Plaintiffs unreasonably "block bill" their time. Defendants claim this makes it impossible to determine the reasonableness of fees. Defendants request that the Court reduce any fee awards, as a result of block billing, by at

least 20%.

The Court declines to reduce the fee award based on block billing.  The
Sixth Circuit has observed that "[t]he key requirement for an award of attorney
fees is that the documentation offered in support of the hours charged must be of
sufficient detail and probative value to enable the court to determine with a high
degree of certainty that such hours were actually and reasonably expended in the
prosecution of the litigation."  *See Imwalle v. Reliance Medical Products, Inc.*, 515
F.3d 531, 553 (6th Cir. 2008) (citation and internal quotation marks omitted).
Here, a review of the billing entries indicates their reasonableness.  They
sufficiently detail the work done and Plaintiffs ask for reasonable amounts of time
for the tasks performed.  Defendants have not identified specific entries that are
unreasonable based on block billing.  Accordingly, this Court declines to
reduce Plaintiffs' fees based on block billing.  *See Richards v. Johnson & Johnson*,
2010 U.S. Dist. LEXIS 82133 at *27 (E.D. Tenn. 2010) (court declines to reduce
attorney fees based on claims of block billing, concluding, "The Court has
carefully reviewed the billing records of Plaintiff and finds that they are
sufficiently detailed and the time spent on tasks appears to be reasonable.  Beyond
the general assertion that block billing can make it difficult to determine
reasonableness of billing entries, Defendants have not advanced any argument
directed to specific entries and appear to have no real basis for this claim.  The

Court does not find that block billing makes it difficult to determine the reasonableness of billing entries in this case...").

### 13. Limited success

Defendants argue that Plaintiffs' fee request should be reduced to reflect Plaintiffs' limited success. Defendants state that since the class certified is smaller than the class size Plaintiffs had sought, the amount of the fee should be reduced.

The Court declines to make such a reduction. Plaintiffs were very successful in this lawsuit, as the Court entered an approximately $2.6 million judgment in their favor after finding that Defendants utilized a rigged formula to deny class members benefits. There is no basis for reducing attorney fees based on the Court's determination that a larger class could not be certified.

### 14. Claims and appeal process

Defendants argue that Plaintiffs cannot recover over three hundred hours of work done prior to the filing of this lawsuit in June 2006. Defendants claim that the entries in question involve work incurred during the claims and appeal process when class members were still seeking benefits from Sears. Defendants point out that ERISA does not permit recovery of attorney fees for work done during the administrative process when remedies are still being exhausted. According to Defendants, class members were represented during the administrative process by counsel.

Plaintiffs argue in response that none of the hours reported relate to the administrative process and that Defendants' claim to the contrary is unsubstantiated. Plaintiffs' counsel does indicate that she "*did assist* the claimants by preparing a template for appeals and by advising, repeatedly of the need to exhaust the administrative process." *See* Plaintiffs' Reply [405] at 4 (emphasis in original). However, "The time spent on this work *was not included* in the spreadsheet nor have plaintiffs requested that the attorneys be compensated for that time in their fee petitions." *Id.* at 4-5 (emphasis in original).

The Court declines to make this deduction. Defendants are correct that Plaintiffs cannot recover for counsel's pre-litigation work on administrative proceedings. However, Plaintiffs make clear in their reply brief that they are not seeking recovery for such expenses. Defendants only offer conjecture that counsel must have represented class members during the administrative process and that all of the entries refer to work done for class members pursuing the administrative process. Defendants' claims are unsubstantiated. It is true that Plaintiffs' counsel spent a large amount of time doing work prior to the filing of this case; however, Defendants offer no basis for claiming that counsel should have spent less time preparing nor do they explain what exactly would constitute an appropriate amount of time working before a complaint is filed. Even if counsel did assist class members during the administrative process, she makes clear in the reply brief that

40

this assistance was not included in her billing log for this case.

Accordingly, no deduction will be made.

### 15. Additional hours

Plaintiffs request additional hours (34.8) for time spent subsequent to October 22, 2010 preparing filings, appearing at a status conference, and attending the hearing on pending motions.  The Court will grant attorney fees for this time.

### 16. Total lodestar before enhancement

Plaintiffs originally sought payment for 1,756.80 hours.  Ms. Brault's hours are reduced by 44.2 hours to 1453.2 hours (which also takes into account the additional 33.5 hours for entries subsequent to October 22, 2010) and are billed at a rate of $300/hr for a total of $435,960.  Mr. Fagan's hours are reduced by 8.1 hours to 59.5 hours total (which takes into account the additional 1.3 hours for entries subsequent to October 22, 2010) and are billed at a rate of $300/hr for a total of $17,850.  Mr. Giroux's hours are reduced by 2.7 hours to 67 hours and are billed at a rate of $300/hr for a total of $20,100.  Mr. Valenti's hours total 35.5 and are billed at a rate of $300/hr for a total of $10,650.  Ms. Jefferson Glazer's hours total 86.6 hours and are billed at a rate of $240/hr for a total of $20,784.

The total lodestar is therefore set at $505,344.

### D. Enhancement- Twelve factors

Plaintiffs request that the Court award fees greater than the total lodestar.

After setting the lodestar, this Court may adjust the lodestar based on the

twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d

714, 717-19 (5th Cir. 1974).  *See Adcock*, 227 F.3d at 349; *see also Hensley*, 461

U.S. at 434 n.9.  Those twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of other employment by the attorney due to
> acceptance of the case; (5) the customary fee; (6) whether the fee is
> fixed or contingent; (7) time limitations imposed by the client or the
> circumstances; (8) the amount involved and the results obtained; (9)
> the experience, reputation, and ability of the attorneys; (10) the
> 'undesirability' of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar
> cases.

*See Blanchard v. Bergeron*, 489 U.S. 87, 92 n.5 (1989); *see also Paschal*, 297 F.3d

at 435.  These factors may be considered during the court's "initial calculation of

the attorney-fee award or when the court is considering a request for an

enhancement."  *See Paschal*, 297 F.3d at 435.

Plaintiffs assert that all twelve *Johnson* factors support an enhancement.

Defendants do not go through a specific breakdown of each factor.  Instead, as

discussed above, they do not believe any fee is warranted.  Defendants maintain in

their Supplemental Brief [436] filed after the hearing held on March 8, 2011 that

Plaintiffs must do more to obtain an enhancement than simply referring to factors

already used to determine the lodestar.

In their brief and at the hearing on March 8, 2011, Plaintiffs requested an

enhancement but did not specify the amount of the enhancement that they believe is warranted, leaving it to this Court's discretion.

After careful consideration, the Court concludes that a 50% enhancement of the total lodestar amount is warranted. As noted above, the primary concern for this Court in evaluating a request for attorney fees is that the fee awarded be reasonable. Such an enhancement is necessary in this matter in order to ensure reasonable compensation.

In *Paschal*, the Sixth Circuit affirmed a district court's award of a 50% enhancement. In that case, various plaintiffs filed a mortgage-lending discrimination suit against Flagstar Bank. While Flagstar was granted summary judgment against several plaintiffs, the remaining plaintiffs proceeded to trial and two sets of plaintiffs won a jury verdict. Plaintiffs then filed a motion seeking about $160,000 in attorney fees, which was granted, along with a 50% enhancement of $80,000. The Sixth Circuit affirmed the award[18], concluding that the district court did not abuse its discretion in relying on four of the *Johnson* factors. Specifically, the court noted that the district court's decision to award a 50% enhancement rested on four grounds: "(1) the attorneys did an excellent job at

---

[18] Although the Sixth Circuit concluded that the district court did not err in awarding the successful plaintiffs a 50% attorney-fee enhancement, the court also found that the attorney-fee enhancement would have to be recalculated on remand since the court reversed the district court's denial of Flagstar's motion for judgment as a matter of law with respect to the claims of one set of plaintiffs. *See Paschal*, 297 F.3d at 436.

trial, (2) this case involved claims of discriminatory treatment in an area (residential mortgage lending) where discriminatory treatment is often difficult to prove, (3) the marshaling of evidence was an arduous and time consuming task and (4) the hourly rates used to calculate the lodestar are relatively modest." *See Paschal*, 297 F.3d at 436-437 (internal quotation marks omitted).

In the instant matter, various *Johnson* factors warrant an enhancement in order to ensure that a reasonable fee is awarded. Plaintiffs' counsel "did an excellent job" in this matter, prevailing in what has been lengthy and complex ERISA litigation. *See Paschal*, 297 F.3d at 436. Counsel have submitted declarations detailing their vast experience, reputation, and ample ability.

The novelty and difficulty of the questions involved in this matter also justify an enhancement, as does the time and labor required. This case has been heavily litigated over the course of the last five years and has involved complex questions arising under ERISA. Difficult and strongly disputed questions emerged regarding the scope of discovery under ERISA, class certification, the use of experts, and the standard of review for dispositive motions. The parties also filed multiple lengthy dispositive motions addressing complex legal questions.

The skill required to perform the legal service properly also justifies an enhancement. As just noted, this heavily litigated case involved complex questions. Addressing these questions required great skill. Just as in *Paschal*, the

44

"marshaling of evidence was an arduous and time-consuming task[,]" as the parties here battled over discovery and the production of documents and information.  *See Paschal*, 297 F.3d at 436.

The amount involved and the results obtained further justifies an enhancement.  Here, Plaintiffs obtained a judgment for approximately $2.6 million.  Over eighty class members will finally obtain the severance benefits they were wrongly denied.

Finally, the nature and length of the professional relationship with the client also warrants an enhancement.  This case is almost five years old.  Counsel's contacts with class representatives preceded the filing of this suit.

Accordingly, based on a combination of numerous *Johnson* factors ((1) experience, reputation, and ability of the attorneys, (2) novelty and difficulty of the questions, (3) time and labor required, (4) skill requisite to perform the legal service properly, (5) amount involved and results obtained, (6) nature and length of professional relationship with the client), a 50% enhancement is warranted.   This enhancement is in no way being ordered to serve some punitive goal.  Rather, such an enhancement ensures that counsel is receiving reasonable compensation for this matter.

Thus, with the 50% enhancement, this Court is awarding total attorney fees of $758,016.

**E. Costs**

Plaintiffs seek $36,605.57 in costs (separate from the already taxed costs noted above).

Defendants argue in response that Plaintiffs are entitled to no costs and that Plaintiffs fail to offer adequate supporting documentation detailing their costs. Defendants assert that the recovery of computer research is not permitted because such costs are part of an attorney's overhead. Defendants also argue that Plaintiffs fail to provide support for their claim that they should be reimbursed for charges normally associated with overhead (faxes, documents, and reproduction). Defendants further note that Plaintiffs are seeking to recover almost $30,000 in expert witness costs, but those costs are not recoverable under ERISA. Defendants point out that the Fieger breakdown of costs submitted includes handwritten notations (without any indication about who made them) indicating that only some of the entries refer to this case, while others do not.

Despite filing a reply and sur-reply to Defendants' briefs, Plaintiffs fail to respond to Defendants' arguments. Instead, they simply maintain they are entitled to costs without countering Defendants' points.

Based on this failure to address Defendants' arguments pertaining to costs, Plaintiffs' motion is denied as to its request for recovery of $36,605.57 in costs.

**F. Post-Judgment Interest**

Plaintiffs are also seeking post-judgment interest but have failed to state what the interest rate is.  Defendants assert in their response that the post-judgment interest rate, as set by 28 U.S.C. §1961(a)[19], is now .264%.  Accordingly, since Plaintiffs have not contested this in either their reply or sur-reply, post-judgment interest is awarded at a rate of .264%.

Plaintiffs also request pre-judgment interest on attorney fees.  However, according to the case law Defendants refer to, attorney fees "will bear interest from the date of a judgment for such fees...."  *See Pennington v. Western Atlas, Inc.*, 55 Fed. Appx. 252, 254 (6th Cir. 2003) (unpublished).  Plaintiffs fail to contest Defendants' argument in their reply or sur-reply.  Thus, interest on the attorney fees award shall begin to accrue from the date of this order.

## VI. Defendants' Motion for Stay of All Proceedings, Including Execution of Judgment, Pending Appeal [398]

Both parties agree that based on Defendants obtaining a supersedeas bond, they are entitled to a stay of execution on the money judgment entered.  *See* Plaintiffs' Response [406] at 2.

However, Plaintiffs request that this Court take into account attorney fees and require Defendants to increase the amount of the supersedeas bond needed to stay this matter pursuant to Fed. R. Civ. P. 62(d).  Defendants oppose this, arguing that they

---

[19] Under the statute, "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant Treasury yield."

47

have obtained a bond for the full amount of the judgment and that Plaintiffs already agreed to a bond as to that amount.

As per Fed. R. Civ. P. 62(d), "If an appeal is taken, the appellant may obtain a stay by supersedeas bond.... The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect *when the court approves the bond*." (emphasis added). At the hearing held on October 8, 2010 on Plaintiffs' Motion for Entry of Judgment, counsel for Defendants requested that the amount of the stay bond be for the amount of the judgment. Plaintiffs' counsel did not oppose the bond amount at the hearing and the Court indicated that it was sufficient even though it did not include pre or post judgment interest. However, at the time the Court made its ruling, it had not yet ordered attorney fees. Neither side knew whether such fees would be ordered or how much they would be if they were ordered.

Now, as per this order, the Court is ordering reasonable attorney fees in the amount of $758,016. Since the Court has not yet approved the bond and stayed the matter pursuant to Fed. R. Civ. P. 62(d), it is appropriate, now that an order for attorney fees is being entered, to include such an award in the amount of the supersedeas bond. *See Verhoff v. Time Warner Cable, Inc.*, 2007 U.S. Dist. LEXIS 93312 at *7-8 (N.D. Ohio 2007) ("Courts generally require that the amount of the bond include the full amount owed under the award, post-judgment interest, *attorney's fees*, and costs") (emphasis added). Accordingly, the amount of the bond must include

48

attorney fees of $758,016.  However, Defendants are still not required to include the

interest award in the bond  amount.  The Court will also subtract the amount that

would have been owed to excluded class members Allen and Wilms.

Accordingly, upon Defendants' obtaining an additional bond in the amount of

$741,910.40, execution of the judgment is stayed pending the Sixth Circuit's ruling

on appeal.[20]

## VII. Conclusion

For the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiffs'

Objections to Proposed Letter to the Class and Individualized Calculation of

Benefits [399] are deemed **RESOLVED**, Defendants' Motion for Judicial Review

of Taxed Bill of Costs, and Objections to Plaintiffs' Bill of Costs [391] is

**GRANTED IN PART,** Defendants' Motion to Exclude Class Members Linda

Allen and Ronnie Wilms [378] is **GRANTED**, Defendants' Motion to Finalize

and/or Alter Judgment [403] is **DENIED**, Plaintiffs' Motion for Attorney Fees,

Costs, and Post-Judgment Interest [394] is **GRANTED IN PART AND DENIED**

**IN PART**, and Defendants' Motion for Stay of All Proceedings, Including

Execution of Judgment, Pending Appeal [398] is **GRANTED IN PART AND**

---

[20] The Court further notes that although Defendants' Motion indicates that it is seeking a stay of all proceedings, their reply indicates that they agree with Plaintiffs that the Court should still retain jurisdiction to address pending issues relating to the dispute over benefit amounts, the class notice, and Plaintiffs' request for attorney fees.  The Court agrees with both parties. Accordingly, the motion is denied in part.

**DENIED IN PART**.

**IT IS HEREBY ORDERED** that as per the terms of the Judgment [381], the amount of the Judgment, after the exclusion of class members Allen and Wilms, is now $2,671,449.60.  Post-judgment interest is set at .264%.

**IT IS HEREBY ORDERED** that Defendants are to provide attorney fees in the amount of $758,016.  Post-judgment interest on those fees is set at .264%.

**IT IS FURTHER ORDERED** that upon Defendants' retention of an additional bond in the amount of $741,910.40, execution of the judgment is stayed pending appeal.

**SO ORDERED**.


Dated: April 26, 2011                           s/ARTHUR J. TARNOW_____
                                                Arthur J. Tarnow
                                                Senior United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 27, 2011 by electronic and/or ordinary mail.

                                                s/Michael L. Williams
                                                Relief Case Manager